[Crim. No. 28861. Second Dist., Div. Four. Dec. 9, 1976.]

In re MARIA R., a Person Coming Under the Juvenile Court Law.
KENNETH F. FARE, as Acting Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
MARIA R., Defendant and Appellant.

732

**COUNSEL**

Ruth Ohanessian, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and Beverly K. Falk, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KINGSLEY, Acting P. J.—Maria appeals from an order of the juvenile court finding her to be a person coming within the provisions of section 602 of the Welfare and Institutions Code and directing that she be taken from her mother's home and suitably placed.[1] For the reasons hereinafter set forth, we reverse the order.

The minor was, at the times herein involved, a girl of the age of 16. She had two children, the one herein involved being Rosa, an infant of the age of eight months. Maria and her two children lived with Maria's mother and, because Maria was still in school, much of the responsibility for the care of the children fell on the mother. On February 10, 1976, the mother noticed that Rosa was ill and Maria and her mother took the baby to their family doctor. The doctor said that there was nothing wrong with Rosa and sent them home. The next day, noticing continued symptoms, including bloody stools, the two women took Rosa to a hospital. The history of Rosa, given by Maria at the time of admittance, included the information that the baby had been given an aspirin tablet every four hours for about a week previous and that the baby, by joint decision of Maria and her mother, had been taken off "formula" about two months after her birth and had, thereafter, been fed baby cereal mixed with water.

The diagnosis of Rosa was that of intoxication from overdosage of aspirin coupled with malnutrition due to a diet deficient in necessary nutrients.

The petition filed in this case alleged that Maria was within section 602 of the Welfare and Institutions Code in that she had violated subdivision (1) of section 273a of the Penal Code. That subdivision reads as follows: "(1) Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health is endangered, is punishable by imprisonment in the county jail

---

[1]We note that, although the dispositional order does not set forth the reasons underlying the order taking the child from her mother's home, the reporter's transcript shows that the court had carefully outlined, on the record, the factors leading it to that disposition.

not exceeding 1 year, or in the state prison for not less than 1 year nor more than 10 years."

The contention here made is that the evidence against Maria does not show a violation of the subdivision relied on. We agree.

■   Section 273a requires that the person charged thereunder "willfully" intend to cause the results listed in that section, instead of the lesser requirement that the person charged "willfully" intend only the doing of an act (or the omission of an act) that, in fact, results in any of those consequences; the evidence in the case at bench fails to sustain the charge. The record shows no more than that a 16-year-old girl, acting on the advice of her mother, ignorantly gave to her baby too much aspirin too often and that she ignorantly provided food which the diagnosing doctor regarded as nutritionally insufficient. The expert testimony was clear that the effect of the combined dosage and diet would not become evident until after a substantial period of time; it is admitted that, as soon as the baby exhibited signs of illness, Maria and her mother sought medical advice and treatment.

The Attorney General relies principally on the decision of this court in *People* v. *Harris* (1966) 239 Cal.App.2d 393 [48 Cal.Rptr. 677]. That reliance is misplaced. In *Harris* we sustained a conviction under section 273a on evidence that the defendant had permitted children to live in an incredibly filthy environment. We described the conditions as follows:

"Officer Walker observed an extremely filthy residence littered with dirt and debris and dirty clothes. Old food was mashed on the floor. There was a sickening odor of defecation everywhere. Cockroaches of all sizes were in every room of the house, crawling on the walls and ceilings and in cupboards.

"In one of the bedrooms he saw a bed without sheets and a mattress completely black with dirt and filth. In the bathroom he observed a 'potty stool' filled with defecation and flies, and defecation on the floor. On the bedroom floor there was dried defecation which had been stepped in. One bed had sheets on it, but they were filthy and appeared yellow from urine.

"A child who was in bed had what appeared to be dried defecation on his legs. The sheet had dried onto his legs and had to be removed

forcibly. The child's buttocks and thighs were raw and 'appeared to be like a beefsteak.' "

In *Harris* (at p. 397) after quoting from *People* v. *Beaugez* (1965) 232 Cal.App.2d 650, 658 [43 Cal.Rptr. 28], as follows:

" '. . . we construe "willfully" as used in Penal Code section 273a, to mean "purposeful" or "with knowledge of consequences." And by applying the "rule of reason" to the whole provision we construe its meaning as a whole to condemn the intentional placing of a child, or permitting him to be placed, in a situation in which serious physical danger or health hazard to the child is reasonably foreseeable. This is the construction of intent which the context of the statute as a whole justifies, and so construed we find it not void for vagueness.' " We said (at p. 398):

"This is not, as defendant suggests, a prosecution for poor housekeeping. This record discloses conditions of filth and wanton neglect which even the most ignorant and insensitive parent should recognize as hazardous to children."

The case before us is not *Harris*. Nothing in the record before us shows that Maria's treatment of Rosa was of such a kind that "even the most ignorant and insensitive parent should recognize as hazardous to children." At most, it shows only that Maria was ignorant of the potentially adverse effects of administering aspirin to a small child. That is not the "purposeful" conduct or the conduct "with knowledge of consequences" of which *Beaugez* speaks.

Similarly, *People* v. *Peabody* (1975) 46 Cal.App.3d 43 [119 Cal.Rptr. 780], quoting from *People* v. *Beaugez, supra,* at pages 657-658, on which the Attorney General also relies, defines the intent element of section 273a as " 'the intentional placing of a child . . . in a situation in which serious physical danger or health hazard to the child *is reasonably foreseeable,*' " (italics in original) and as "knowledge, actual or imputed, that the act tends to endanger another's life."[2] Neither language applies here.

The cases relied on by the Attorney General stand for no more than the familiar proposition that, in some cases, the injurious effect of

---

[2]*People* v. *Peabody* (1975) 46 Cal.App.3d 43, 47 [119 Cal.Rptr. 780].

intended conduct may be so obvious that a trier of fact properly may infer that an actual intent to harm existed. The evidence in this case is not of that nature.

The order appealed from is reversed.

Dunn, J., and Jefferson (Bernard), J., concurred.