[No. A025713. First Dist., Div. Five. July 1, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
KAREN ARNETTA SCOTT, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Part IV is not published, because it does not meet the standards for publication as provided in California Rules of Court, rule 976(b).

**COUNSEL**

George F. Camerlengo, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Dane R. Gillette and Kristofer Jorstad, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**LOW, P. J.**—Defendant Karen Arnetta Scott appeals from judgment entered after a jury found her guilty of being an accessory to robbery (Pen. Code, § 32). On appeal, defendant contends that (1) the trial court erred in failing to give CALJIC No. 17.01, *sua sponte,* to the jury; (2) the jury was improperly instructed that defendant could be convicted as an accessory rather than as a principal; and (3) the evidence is insufficient to support the jury's verdict. We affirm.

### I

Steven Jackson, defendant's brother-in-law, robbed a Barclay's Bank in San Mateo. As Jackson walked toward the door with the money, Susan Williamson, the teller, screamed out that she had been robbed. James Davis, the only other customer in the bank at the time, followed Jackson out of the door. He saw Jackson, who was walking "very fast," get in a red Volkswagen driven by a black female.

Detective Sergeant William Pollett, who had heard the radio broadcast describing the robbery and getaway car, got into an unmarked police car with two other detectives. As they headed toward the bank, a red Volkswagen, going in the opposite direction, passed them. Sergeant Pollett made a U-turn, followed the car and with other police assistance stopped the car. Jackson raised his hands to indicate surrender and maintained that position until he got out of the car. Defendant got out first, followed by Jackson. After arresting defendant and Jackson, Sergeant Pollett found a woman's purse with a large amount of money spilling out of it between the front bucket seats of the car. There was also some money on the floor to the rear of the purse. In addition to the money, the purse contained makeup and identification belonging to defendant.

Defendant denied knowing anything about the robbery. She testified that she was planning to leave for an appointment at a drop-in health clinic in San Mateo when Jackson came to her house and asked for a ride. She agreed to give Jackson a ride because he also wanted to go to San Mateo. Following Jackson's directions, defendant parked in front of an apartment building; Jackson left and defendant waited for his return. Although she had parked just down the street from the bank, defendant stated that she did not see Barclay's Bank and did not know a bank was located on the corner. Jackson returned in about five minutes, "looked behind him and he raised up the front car seat and he jumped in the back," and closed the door. He laid down in the back seat and told defendant to make a U-turn and to take off in a hurry because he had been in a fight and the police were going to be

looking for him. Defendant testified that she was confused by Jackson's actions, but complied with his directions because she was afraid of him from his tone of voice. Both he and her husband, from whom she was separated, were violent men. Defendant conceded that Jackson's actions made her suspicious and she believed that more than a fight was involved. Despite Jackson's protests, defendant stopped as soon as she saw Officer Sharka's red lights because she had never been arrested before and did not want to get into trouble.

In rebuttal, the prosecution called Officer Prudhel who had interviewed defendant about an hour after her arrest and played portions of a taped statement she had made. Although the portions of defendant's statements played for the jury were not reported in the record, her postarrest statement contradicted her testimony that she did not know a bank was on the corner of the street where she had parked and that she had never seen any money.

## II

■■ Defendant contends that the trial court erred in failing to instruct the jury, *sua sponte,* with CALJIC No. 17.01, which requires jury unanimity on the act or acts forming the basis of the conviction.

■■ Even in the absence of a request, a trial court has a duty to instruct on general principles of law closely and openly connected with the facts before the court and which are necessary for the jury's understanding of the case. (*People* v. *Freeman* (1978) 22 Cal.3d 434, 437 [149 Cal.Rptr. 396, 584 P.2d 533].) Where there is evidence of several criminal acts and the defendant is not charged with a violation of all those acts, it has been held that the trial court is required, *sua sponte,* to instruct the jury they must all agree the accused committed the same act or acts. ■■ But here CALJIC No. 17.01 was not required.

In the information filed by the prosecutor, defendant was charged with alternative counts, being either an aider and abettor to robbery or an accessory after the fact. The jury was instructed that defendant could be found guilty of one or the other, but not both; in the same instruction, the jury was told, "[Y]ou must all agree as to the particular offense committed . . . ." To find defendant guilty of robbery, the jury had to consider *all* of defendant's acts from the time she gave Jackson a ride to San Mateo until they were stopped by the police. To find defendant guilty of being an accessory, the jury had to consider the *same* acts, but had to reject any inference of an intent to rob or to facilitate the robbery from those acts. In effect, the only offense charged was the one proved, a situation to which the rule requiring jury unanimity on the act or acts of which defendant is convicted

is not applicable. (See *People* v. *Madden* (1981) 116 Cal.App.3d 212, 216, fn. 4 [171 Cal.Rptr. 897].)

The trial court had no duty to instruct the jury with CALJIC No. 17.01. Our conclusion would be no different even if defendant had identified the various acts from which the prosecutor had to elect one for the jury to use as the basis of conviction. Defendant's participation as an accessory simply did not involve separate acts in any real and practical sense. (See *People* v. *Ruiz* (1957) 155 Cal.App.2d 59, 61 [317 P.2d 80].)

### III

■ Defendant contends that the jury was improperly instructed that she could be convicted of being an accessory because the robbery was still in progress when she drove Jackson away from the bank. ■ Despite the People's contention that defendant waived any error by failing to object at trial, this court "may review any instruction given even though no objection was made in the lower court if the substantial rights of the defendant are affected [citations]." (*People* v. *McIntyre* (1981) 115 Cal.App.3d 899, 906 [176 Cal.Rptr. 3].) ■ We find no error.

Defendant's argument, relying on *People* v. *Jardine* (1981) 116 Cal.App.3d 907 [172 Cal.Rptr. 408], presumes that one who stays in an automobile and assists in the robber's escape can only be found guilty as an aider and abettor. (See also *People* v. *Dills* (1959) 171 Cal.App.2d 256, 260 [340 P.2d 273].) Merely assisting in an escape, however, is insufficient to establish liability as a principal. There must be proof that the aider and abettor acted with *both* knowledge of the criminal purpose of the perpetrator *and* "with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense. [Citations.]" (*People* v. *Beeman* (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60, 674 P.2d 1318].) The jury concluded that defendant did not have the requisite intent, which the prosecution argued it had to find, to commit robbery; its verdict of guilty as an accessory was therefore appropriate.

Instead of being convicted of the more serious offense of robbery, defendant was guilty of the less serious charge of accessory. *Jardine* does not stand for the proposition that the continuous nature of a robbery precludes conviction for a less serious offense. The rule that a robbery continues until the perpetrator reaches a place of temporary safety and is in unchallenged possession of the stolen property has traditionally been used to establish liability for a *more serious offense* in felony-murder and kidnaping-for-robbery cases. (See *People* v. *Salas* (1972) 7 Cal.3d 812, 821-822 [103 Cal.Rptr. 431, 500 P.2d 7, 58 A.L.R.3d 832].) *Jardine,* which relied on

felony-murder cases, represents an extension of the rule to establish liability for the more serious offense of robbery where the defendant there sought an instruction on the offense of accessory. (*People* v. *Jardine, supra,* 116 Cal.App.3d at pp. 919-922.) We decline to find the converse of the "continuous crime" rule to be true, that potential liability for a more serious offense precludes liability for a less serious one. Defendant's argument is unsupported by case law.

Liability as an accessory attaches when, among other elements, the principal has committed a specific completed felony. (See *People* v. *Prado* (1977) 67 Cal.App.3d 267, 271 [136 Cal.Rptr. 521].) Here, the jury was instructed: "Every person who, *after the crime of robbery has been committed,* harbors, conceals, or aids a principal in such robbery, with the intent that the principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that the principal *has committed* the crime of robbery, is guilty as an accessory to the robbery." (Italics added.) To establish liability as either a principal or an accessory, the crime of robbery is completed as soon as there has been an asportation, however slight, of the property to the robber's dominion and control. (See *People* v. *Price* (1972) 25 Cal.App.3d 576, 578-579 [102 Cal.Rptr. 71].) The jury could and did find that a robbery had been committed: Jackson obtained dominion and control over the bank's money as soon as it was handed to him by the teller. The robbery, for purposes of accessory liability, was completed at that point. (See Pen. Code, § 32.)

IV*

. . . . . . . . . . . . . . . . . . . . . . .

King, J., and Haning, J., concurred.

*See footnote, *ante,* page 267.