[No. B028096. Second Dist., Div. Four. Oct. 7, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
FELICIANA BAUTISTA VARGAS, Defendant and Appellant.

**COUNSEL**

David D. Carico, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Richard B. Cullather and William H. Davis, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

GEORGE, J.—In a single-count information, appellant Feliciana Bautista Vargas was charged with committing felony child abuse and endangerment between September 8-17, 1986, in violation of Penal Code section 273a, subdivision (1).[1] After a jury found appellant guilty as charged, the trial court sentenced her to the midterm of four years in state prison. This appeal followed.

Appellant contends: (1) the trial court erred in failing to instruct sua sponte that in order to return a verdict of guilty, the jury (a) had to agree unanimously on one or more acts or omissions constituting the crime, and (b) had to agree unanimously that appellant willfully committed the acts in question or was responsible as the result of culpable negligence; and (2) the trial court failed to instruct the jury that in order to find willful child endangerment, the jury had to find she had knowledge that her acts or failure to act would endanger the health and welfare of the child victim. For the reasons that follow, we affirm the judgment.

### FACTS

On the afternoon of September 17, 1986, a police officer was contacted by a handyman, Abraham Perez, who, while making repairs at appellant's apartment, had observed the two-and-a-half-year-old victim Ramon on that day and on other occasions during the preceding week. Because of the information imparted by Perez, the officer concluded the child might be "in danger" and proceeded to the apartment, located in the City of Long Beach.

Upon being admitted by appellant, the officer encountered another resident of the apartment, a male adult named Modesto Espinosa Aguilar, and

---

[1] Penal Code section 273a, subdivision (1) states: "Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health is endangered, is punishable by imprisonment in the county jail not exceeding one year, or in the state prison for 2, 4, or 6 years."

All further statutory references are to the Penal Code.

was led to a bedroom where he observed Ramon lying on a mattress.[2] Ramon's eyes seemed glazed. His feet and hands appeared to be burned and swollen and his right cheek bruised. The officer proceeded to examine the rest of Ramon's body and observed a large dark bruise on the buttocks and burn marks on the top of the child's hands and feet. The genitals and buttocks appeared to be burned and swollen, and there were "circular looping marks" on the back and chest. Based on his prior experience, the officer concluded these marks were consistent with the use of a soft material (such as an extension cord) as a whip. Paramedics were summoned and transported Ramon to the emergency room at St. Mary's Medical Center in Long Beach.

Shortly thereafter, Ramon was transported by helicopter to Los Angeles County/University of Southern California Medical Center, where the Director of the Burn Service, Dr. Bruce Zawacki, examined him. The doctor concluded that injuries on Ramon's cheeks were consistent with bite marks inflicted by a human. The marks on Ramon's chest and back were caused by a whip-like instrument such as a light cord or rope. The opening of Ramon's penis was " 'sealed shut,' " and there was " 'marked crusting on [the] penile shaft.' " Ramon was dehydrated and had suffered first degree and second degree burns on both feet, second degree burns on the genitals and buttocks, and contusions to the chest wall.

In Dr. Zawacki's opinion, the burns to Ramon's body were "consistent with an immersion injury in hot liquid." The symmetrical pattern and distribution of the burn injuries were inconsistent with Ramon's having fallen accidentally into a bathtub. In the doctor's experience, he had not seen "children doing things like that to themselves." An accidental fall into a bathtub would have left burn marks which would be irregular in their distribution and pattern. Considering all the evidence, Dr. Zawacki concluded that Ramon was a battered-child-syndrome victim.

The prosecution introduced evidence of statements made by appellant. When Perez, the handyman, had expressed concern for the health of Ramon, appellant indicated the infant "had bitten her on her thumbs and . . . she had to beat him." On September 18, 1986, during an interview with a detective of the Long Beach Police Department, appellant gave the following explanation for the injury to Ramon's cheek: she had placed her fingers into his mouth in order to make him speak; Ramon had clamped his teeth

---

[2] Appellant resided at the apartment with Aguilar but was not married to him. In her testimony at trial appellant described Ramon as her godchild, stating that Ramon's mother "gave" him to appellant in Mexico so that he could have "a better life" in the United States. Ramon's birthdate was February 26, 1984. The only occupants whom the officer observed in the apartment were appellant, Aguilar, and Ramon.

onto her fingers and would not let go; and appellant therefore bit his right cheek to show him how much it hurt to be bitten. Appellant offered no explanation for the whip marks on Ramon's body but claimed the burn marks resulted from his climbing into a bathtub filled with hot water. She had placed ointment on his skin.

In her testimony at trial, appellant similarly described the cause of the burn injuries, denying having placed Ramon intentionally in the hot water and claiming she was unable to transport him to the hospital. She was planning to bring him to the hospital the day the officer came to her apartment. She denied ever striking Ramon with a cord or rope but said Aguilar was a drug user who, when under the influence, would hit Ramon and strike him with belts and a rope. Appellant denied telling the detective that Aguilar was responsible for the whip marks or that she had bitten Ramon in the face on September 12 or 13. The injuries to Ramon's cheeks were not bites.

Appellant's aunt testified that appellant had lived with her in Santa Ana for three months upon leaving Mexico but before moving to Long Beach, and that appellant had treated Ramon very well, never striking him with a rope or an electric cord.

On rebuttal, the prosecution introduced evidence that during the interview appellant had told the detective Ramon's burns had been suffered on September 12 or 13, and that she had bitten Ramon on the cheek after he had bitten her finger. The detective testified that when he interviewed Aguilar on September 18, he appeared perfectly healthy, had no tracks on his arms from drug use, and did not show any signs of drug withdrawal. On surrebuttal, appellant denied telling the detective that she had bitten Ramon on the cheek; she had said the injury was a bruise rather than a bite.

DISCUSSION

I

*Under the Well-established Exception Applicable to Offenses Involving a Continuous Course of Conduct, the Trial Court Had No Duty, Merely Because Appellant Was Charged With Both Willful and Negligent Conduct Constituting Child Abuse and Endangerment, to Instruct the Jury That in Order to Convict, It Must Agree Unanimously That She Committed the Same Specific Act or Was Guilty Under the Same Theory of Liability*

■ As observed by Justice Kaufman, then of the Court of Appeal, "A long line of cases has held that where the jury is presented with evidence of

more than one factual basis for conviction of the crime charged it must be instructed along the lines of CALJIC [Cal. Jury Instns., Crim. (1979 rev.)] No. 17.01 that it must unanimously agree upon the act or acts constituting the crime. [Fn. omitted.] [Citations.] The instruction must be given sua sponte if not requested. [Citations.]

" 'Emerging from this long line of cases is the so-called "either/or" rule: when an accusatory pleading charges a single criminal act and the evidence shows more than one such unlawful act, *either* the prosecution must select the specific act relied upon to prove the charge *or* the jury must be instructed in the words of CALJIC No. 17.01 or 4.71.5 or their equivalent that it must unanimously agree beyond a reasonable doubt that defendant committed the same specific criminal act. . . .' [Fn. omitted.] [Citation.] In the case at bench, the court read neither CALJIC No. 17.01 nor No. 4.71.5 with regard to the charges under section 647a. [Italics in original.]

"However, a well-established exception to the 'either/or' rule obtains where the act or acts constituting the charged crime amount to a 'continuous course of conduct' and 'the statute defining the crime may be interpreted as applying, on occasion, to an offense which may be continuous in nature such as failure to provide, *child abuse,* contributing to the delinquency of a minor, driving under the influence and the like [citations].' (*People* v. *Madden* (1981) 116 Cal.App.3d 212, 218 . . . .) ■ '[S]tatutes susceptible of such an interpretation, e.g., *child abuse* (*People* v. *Ewing* (1977) 72 Cal.App.3d 714, 717 . . . ), failure to provide for a minor child (*People* v. *Morrison* (1921) 54 Cal.App. 469, 471 . . . ), and pandering (*People* v. *White* (1979) 89 Cal.App.3d 143, 151 . . . ) . . . are all areas where it is possible *a series of acts, which if individually considered, might not amount to a crime, but the cumulative effect is criminal.*' (*People* v. *Epps* [(1981)] 122 Cal.App.3d 691, 702 . . . .) [First italics added.]

"*The crime defined in Penal Code section 647a is such an offense* . . . . [Italics in original.]

"Section 647a is the same in this regard as the statutes prohibiting child abuse and contributing to the delinquency of a minor. (Pen. Code, §§ 273a, 272.) *The child abuse statute can be violated by a single act* (see, e.g., *Lansdown* v. *Superior Court* (1970) 10 Cal.App.3d 604 . . . ) *or by a repetitive or continuous course of conduct* (see *People* v. *Ewing, supra,* 72 Cal.App.3d 714, 717 . . . )." (*People* v. *Moore* (1986) 185 Cal.App.3d 1005, 1014-1015 [230 Cal.Rptr. 237], italics added.)

Similarly it has been noted: "Neither instruction nor election are required . . . if the case falls within the continuous course of conduct exception.

This exception arises . . . when, as here, the statute contemplates a continuous course of conduct of a series of acts over a period of time. (*People* v. *Ewing* (1977) 72 Cal.App.3d 714, 717 . . . [child abuse].) [¶] . . . [¶] Like child abuse, this is a case where each individual act may not amount to a crime, but the cumulative outcome is criminal. 'It is the continuing course of abuse which leads to prosecution and conviction.' [Citation.]" (*People* v. *Thompson* (1984) 160 Cal.App.3d 220, 224-225 [206 Cal.Rptr. 516].)

Both *Moore* and *Thompson* cite with approval the case of *People* v. *Ewing* (1977) 72 Cal.App.3d 714 [140 Cal.Rptr. 299], the sole reported case we have found specifically involving the applicability of the "continuous course of conduct" exception to the offense of child abuse and endangerment. (§ 273a, subd. (1).)

In *Ewing,* the Court of Appeal held: "Although the child abuse statute may be violated by a single act (see e.g., *Lansdown* v. *Superior Court,* 10 Cal.App.3d 604 . . . ), more commonly it covers repetitive or continuous conduct. (See e.g., *People* v. *Wright, supra,* 60 Cal.App.3d 6; *People* v. *Atkins,* 53 Cal.App.3d 348 . . . ; *People* v. *Beaugez,* 232 Cal.App.2d 650 . . . .) Here, the information alleged a course of conduct in statutory terms which had occurred between two designated dates. The issue before the jury was whether the accused was guilty of the course of conduct, not whether he had committed a particular act on a particular day. The instruction requiring jury unanimity as to particular acts was inappropriate. Its omission was not error." (72 Cal.App.3d at p. 717.)

The conviction in *Ewing* was premised upon evidence establishing that over a *four-month period,* "the child suffered scratches, scalds, burns and bruises which defendant attributed to accident or carelessness," and ultimately "head bruises and . . . three separate subdural hematomas, one of which proved fatal." (72 Cal.App.3d at p. 716.)

 The case before us involves burns, bruises, contusions, whipping injuries, and bites inflicted within a mere *10-day period.* Under the frequently-cited holding in *Ewing* there was no requirement that the jury be instructed it had to agree unanimously on one or more *acts* constituting the charge of child abuse or endangerment.[3] Section 273a may be violated by a

---

[3] The following two instructions were given to the jury upon request of the prosecution and with no apparent objection by the defense.

CALJIC No. 16.170 (modified): "Any person who, under circumstances or conditions likely to produce great bodily harm or death, either willfully or with criminal negligence causes or permits any child to suffer, or willfully inflicts on any child unjustifiable pain or mental suffering is guilty of violating Section 273a(1) of the Penal Code, a felony."

Special Instruction: "In order to prove the commission of the crime of Felony Child Endangering, each of the following elements must be proved:

defendant's *course of conduct.* The various injuries suffered by Ramon within a brief time span suggest a systematic pattern of abuse rather than separate, isolated incidents. (Compare *People* v. *Epps* (1981) 122 Cal.App.3d 691, 702-703 [176 Cal.Rptr. 332].) In the present case, as in *Ewing,* expert testimony established that "the child was a victim of the battered child syndrome." (*Ewing, supra,* 72 Cal.App.3d at p. 716.) "[T]he syndrome denotes repeated, sometimes serious, injuries inflicted over a span of time; their nature, severity and number are such as to preclude an inference of accident." (*Id.,* at p. 717.)

The holding in *Ewing* directly disposes of appellant's argument that instructional error occurred because "the jurors may have been split as to which act or acts appellant committed, all agreeing that appellant either bit, burned or whipped the child, but without unanimous agreement as to any one of the purported acts of violence." Appellant argues additionally, however, that the course of conduct exception recognized in *Ewing* did not obviate the need for a unanimity instruction because "some of the jurors may have reached the conclusion that appellant willfully inflicted injuries upon the child, while others may have found that appellant endangered the child's life by not protecting the child from an abusive husband or obtaining appropriate medical care for the child."

The only authority cited by appellant or by the dissent relating specifically to whether a unanimity instruction is required in a prosecution under section 273a is the *Ewing* case, which holds such an instruction is not required, and the jury instruction set forth in CALJIC No. 16.170 (1987 new).[4] The latter instruction, set forth in a pocket part apparently not yet distributed to trial judges when the jury was instructed on February 10, 1987, and again substantially revised for the fifth edition, scheduled for publication in 1988, added a new requirement that the jury agree unanimously that the defendant (1) willfully committed the acts in question, (2) is responsible as a result of culpable negligence, or (3) is guilty under both of the foregoing theories.

---

"1 A. That a person willfully caused or permitted a child to suffer, or inflicted thereon unjustifiable physical pain or mental suffering; or

"B. That a person having the care or custody of a child willfully caused or permitted the person or health of a child to be injured; or

"C. That a person willfully caused or permitted a child to be placed in such a situation that its person or health was endangered; and

"2 The circumstances or conditions to which the child was exposed were likely to produce great bodily harm or death."

[4] The instruction in question is described as "new" in the February 1987 preface to the January 1987 pocket part. See also CALJIC No. 9.37 (1987 new) and the "Use Note" to both instructions, suggesting that "CALJIC 17.01 [requiring unanimity] will be required if the charge includes more than one act or omission as a basis for conviction."

No reported decision has required the giving of such an instruction in a prosecution for violation of section 273a, and no authority or rationale for such a requirement is set forth in the "Use Note" to the instruction. Although the CALJIC pattern instructions perform an invaluable service to the bench and bar, that those instructions are not sacrosanct is apparent from their treatment by the appellate courts. Both the felony and misdemeanor CALJIC instructions (Nos. 9.37 (1987 new), 16.170 (1987 new)) and their "Use Notes" pertaining to the offense of violation of section 273a, insofar as they require a unanimity instruction where more than one act or omission are involved, overlook and are totally contrary to even the narrowest interpretation of the holding in *Ewing* that a unanimity instruction is not required where multiple *acts* of willful child abuse are involved. Therefore, these instructions hardly can be deemed authority for the novel proposition advanced by appellant, that the rule recognized in *Ewing* is inapplicable where both willful and negligent conduct is charged under section 273a.

 Where, as in the case before us, the evidence establishes a pattern of physical trauma inflicted upon a child within a relatively short period of time, *a single course of conduct is involved* and no justification exists for departing from the well-established rule (set forth in *Ewing*) that jury unanimity is not required as to the underlying conduct constituting the violation of section 273a. That a single set of circumstances may have established criminal culpability under different legal theories does not mean more than one course of conduct was involved.

 Despite the assertion in the dissenting opinion that "no California case until this one has ever excused the requirement that the jury must unanimously agree on the particular continuing course or courses of conduct of which defendant is guilty in order to convict" (dissenting opn., *post* at p. 1472), our holding is premised upon our conclusion that only *a single course of conduct* is reflected in the evidence presented to the trier of fact. We observe, on the contrary, that no reported decision has followed the dissenting opinion's approach of parsing the child abuse and endangerment statute so as to transform acts of physical abuse, *closely related in time and manner,* into separate courses of conduct each requiring jury unanimity for conviction.

The only case cited by the dissent in direct support of its position is a case involving a defendant charged with several counts of forcible oral copulation and forcible sodomy. In that case the court held, "Multiple sex acts cannot be held to be continuous conduct on a theory of there being but one act of sexual abuse." (*People v. Madden* (1981) 116 Cal.App.3d 212, 218 [171 Cal.Rptr. 897].) The court in *Madden* therefore concluded a unanimity

instruction was required, while distinguishing "an offense which may be continuous in nature such as . . . child abuse." (*Id.*, at p. 218.)

Given appellant's damaging admissions to the handyman, Perez, and to the interviewing detective, it is extremely unlikely the jury convicted appellant on the theory she did not inflict any of Ramon's physical injuries. But even assuming in appellant's favor that all or some of Ramon's injuries were inflicted by Aguilar while appellant passively acquiesced, failing to obtain appropriate medical care for Ramon, a unanimity instruction still would not be required.

The Legislature has seen fit to proscribe *equally, without distinction as to the available punishment, any* violation of section 273a, subdivision (1), whether a defendant, "under circumstances or conditions likely to produce great bodily harm or death," (1) willfully and directly inflicts "unjustifiable physical pain or mental suffering" upon the child, (2) merely willfully "permits" the infliction of such pain or suffering or injury to the child's "person or health," or (3) willfully places or permits the child to be placed "in such situation that its person or health is endangered." The particular circumstances of the violation and the offender's background are considered by the trial court in performing its sentencing function (see Cal. Rules of Court, rules 401-453) when deciding whether to grant probation or impose a sentence within the range of the prescribed punishment (a term in county jail not exceeding one year, or in state prison for two, four, or six years).

Where a single course of conduct is proved at trial, it is permissible for members of the jury to determine that the underlying facts establish a violation of the statute under different legal theories such as direct infliction of abuse or permitting the child's health or safety to be endangered. The jury need not agree unanimously on the *legal theory* that defines a given set of facts as criminal conduct.

In our recent decision in *People* v. *Burns* (1987) 196 Cal.App.3d 1440, 1457-1459 [242 Cal.Rptr. 573], we determined that the trial court did not err, under the circumstances of that case, in not instructing the jurors sua sponte (pursuant to CALJIC No. 17.01) that they had to agree unanimously on the act constituting the defendant's aiding and abetting of four first degree murders. In so holding, we relied on the decision in *People* v. *Forbes* (1985) 175 Cal.App.3d 807 [221 Cal.Rptr. 275], which, like *Burns,* involved the analogous issue whether a unanimity instruction was required where an aiding and abetting theory was submitted to the jury.

In *Forbes,* the defendant argued "that it was error for the court not to instruct on its own motion that the jurors must unanimously agree on

which of two theories—direct perpetration or aiding and abetting—they relied in finding him guilty of murder." (175 Cal.App.3d at p. 816.) The Court of Appeal held: "Where the evidence shows more than one act which could constitute the charged offense and the prosecution does not elect to rely on any one such act, a unanimity instruction is usually required. (*People* v. *Diedrich* (1982) 31 Cal.3d 263, 280-282 . . . ; see, e.g., CALJIC No. 17.01.) However, such instruction has uniformly been held unnecessary where a single charged offense is submitted to the jury on *alternative legal theories of culpability,* a common example being where a charge of first degree murder is supported on alternate theories of felony murder or willful, deliberate and premeditated killing. (Pen. Code, § 189.) It is held sufficient that each juror is convinced beyond a reasonable doubt that the defendant committed the offense *as that offense is defined by statute.* (*People* v. *Milan* (1973) 9 Cal.3d 185, 195 . . ., reaffirming *People* v. *Nye* (1965) 63 Cal.2d 166, 173 . . . (cert. den. (1966) 384 U.S. 1026 . . . ); *People* v. *Guerra* (1985) 40 Cal.3d 377, 386 . . . ; *People* v. *Nicholas* (1980) 112 Cal.App.3d 249, 272-273 . . . .) An aider and abettor is defined by California statute as a principal in the offense equally guilty with the perpetrator. (Pen. Code, §§ 30-31; *People* v. *Terry* (1970) 2 Cal.3d 362, 401 . . . .) *It follows that jurors need not unanimously agree by which statute the defendant attains his status as a principal in the crime.* There was no error." (*People* v. *Forbes, supra,* 175 Cal.App.3d at pp. 816-817, italics added. See also *People* v. *Failla* (1966) 64 Cal.2d 560, 567-569 [51 Cal.Rptr. 103, 414 P.2d 39]; *People* v. *Scott* (1985) 170 Cal.App.3d 267, 270-271 [215 Cal.Rptr. 618].)

Contrary to the dissent, we conclude the foregoing holdings refute appellant's argument that the existence of separate "courses of conduct," requiring a unanimity instruction, was established by references in the prosecutor's closing argument (without objection by defense counsel) to "a theory of liability for abuse and . . . a theory of liability for neglect," and to "alternative bases" of liability.

■ There is authority that, *when appropriate in light of the evidence,* a unanimity instruction must be given sua sponte. (*People* v. *Madden, supra,* 116 Cal.App.3d 212, 218-219.) We note, however, that not only does the record fail to indicate any objection by defense counsel to the jury instructions given by the court or any request by defense counsel for a unanimity instruction, but that among the instructions given by the court upon request of the *defense* was a lesser-included-offense instruction on misdemeanor child abuse and endangerment otherwise identical to one of the felony instructions (given at the request of the prosecution) in submitting alterna-

tive theories of liability to the jury without any requirement of unanimity.[5] Similarly, defense counsel, like the prosecution, referred in closing argument to "theories" of liability. Under these circumstances, appellant is precluded in any event from obtaining reversal of her conviction based on the trial court's failure to instruct the jury that it must agree unanimously on acts or courses of conduct underlying her violation of section 273a.

■ In view of the evidence before the trial court, we hold applicable to the present case the well-established rule recognized in *People* v. *Ewing, supra,* 72 Cal.App.3d 714, 717, that the giving of an instruction, sua sponte, requiring jury unanimity is "inappropriate" where a single course of conduct in violation of the child abuse and endangerment statute is established.

II

*The General Definition of the Term "Willfully" Is Applicable to the Statutory Proscription Against Child Endangerment*

The trial court instructed the jury that it could find appellant guilty of felony child "endangerment" if it found, among other matters, that she "willfully caused or permitted a child to be placed in such situation that its person or health was endangered."

The trial court also instructed the jury that "[t]he word 'willfully,' when applied to the intent with which an act is done or omitted and as used in my instructions, implies simply a purpose or willingness to commit the act or to make the omission in question. The word does not require in its meaning any intent to violate law, or to injure another, or to acquire any advantage." (CALJIC No. 1.20 (4th ed. 1979).)

■ Appellant, contending the above-quoted definition of "willfully" inadequately informed the jury of the elements of willful felony child endangerment, maintains the trial court had a sua sponte duty to instruct the jury that, in order to find her guilty of willfully causing or permitting the child victim to be endangered, it had to find she had actual knowledge Ramon was endangered by her intentional acts or by her negligence (i.e., her failure to remove Ramon from Aguilar's presence or otherwise protect the child from him, and her failure to provide medical attention).

---

[5] As requested by the defense, the trial court instructed the jury in accordance with "CALJIC 16.170 Modified for Misdemeanor": "Any person who, under circumstances or conditions other than those likely to produce great bodily harm or death, either willfully or with criminal negligence causes or permits any child to suffer, or willfully inflicts on any child unjustifiable pain or mental suffering is guilty of violating Section 273a(2) of the Penal Code, a misdemeanor." (Compare the felony instructions set forth in fn. 3, *ante.*)

In *People* v. *Beaugez* (1965) 232 Cal.App.2d 650 [43 Cal.Rptr. 28], upon which appellant relies in support of this contention, the specific portion of the 1963 version of section 273a pertaining to child endangerment was attacked on the ground it was unconstitutionally void for vagueness. At all times pertinent to the facts underlying the *Beaugez* case, section 273a provided in relevant part that " 'any person who willfully causes or permits such child to be placed in such situation that its life or limb may be endangered, or its health likely to be injured' " was guilty of a criminal offense. (*Id.,* at p. 655.)

Rejecting the defendant's argument, the court in *Beaugez* "construe[d] 'willfully' as used in Penal Code section 273a to mean 'purposeful' or 'with knowledge of consequences.' " (232 Cal.App.2d at p. 658.) The court further noted that "by applying the 'rule of reason' [fn. omitted] to the whole provision we construe its meaning as a whole to condemn the intentional placing of a child, or permitting him to be placed, in a situation in which serious physical danger or health hazard to the child is reasonably foreseeable. This is the construction of intent which the context of the statute as a whole justifies, and so construed we find it not void for vagueness." (*Ibid.*)

CALJIC No. 16.173 (1985 rev.) (4th ed. 1986 pocket pt.) defined "willfully" as it pertained to child endangerment. This instruction, which was developed in light of *Beaugez,* provided: "The word 'willfully' as used in the foregoing instructions means 'with knowledge of the consequences' or 'purposefully.' 'Willfully' also requires that the act or omission be done with general criminal intent. To constitute general criminal intent it is not necessary that there should exist an intent to violate the law. When a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent, even though he may not know that his act or conduct is unlawful."

In 1987, the Committee on Standard Jury Instructions, Criminal, of the Los Angeles Superior Court, withdrew its approval of CALJIC No. 16.173 (1985 rev.) in light of its approval of CALJIC No. 16.170 (1987 new) relating to the general subject of child abuse and endangerment under section 273a, subdivision (2).[6] In that instruction the Committee again defined "willfully" to mean " 'with knowledge of the consequences' or 'purposefully.' " (CALJIC No. 16.170 (1987 new) (4th ed. 1987 pocket pt.).)

In the present case, the trial court did not instruct the jury in accordance with CALJIC No. 16.173 (1985 rev.) or CALJIC No. 16.170 (1987 new),

---

[6] A violation of subdivision (2) is a misdemeanor. When the crime of child abuse or endangerment is committed under circumstances or conditions likely to produce great bodily injury or death, it rises to the level of a felony and violates section 273a, subdivision (1). (See CALJIC No. 9.37 (1987 new).)

both of which incorporate *Beaugez's* construction of the word "willfully."[7] Instead, it gave the jury the general definition of "willfully" set forth in CALJIC No. 1.20 (4th ed. 1979).

CALJIC No. 1.20 has been held to be an acceptable instruction on the meaning of "willful" in cases involving a violation of section 273a. (*People v. Sheffield* (1985) 168 Cal.App.3d 158, 165 [214 Cal.Rptr. 40], fns. 8 and 9 and accompanying text; *People v. Pointer* (1984) 151 Cal.App.3d 1128, 1134 [199 Cal.Rptr. 357]; *People v. Northrop* (1982) 132 Cal.App.3d 1027, 1038-1039 [182 Cal.Rptr. 197], disapproved on another ground in *People v. Smith* (1984) 35 Cal.3d 798, 808 [201 Cal.Rptr. 311, 678 P.2d 886].) In *Sheffield,* the court stated that an examination of *Beaugez* and *Pointer* "reveals that both instructions [namely CALJIC Nos. 1.20 and 16.173] are derived from the same source and are intended to produce the same result, i.e., when the word 'willfully' is used in a statute it implies a general intent crime and not a specific intent crime."[8] (168 Cal.App.3d at p. 165, fn. 9.)

We conclude the trial court's instructions defining the word "willfully" were not erroneous.

### DISPOSITION

The judgment is affirmed, and the matter is remanded to the trial court with directions to compute appellant's presentence custody credits pursuant to section 2900.5 and to forward a corrected abstract to the Department of Corrections reflecting those credits.[9]

Goertzen, J., concurred.

**McCLOSKY, J.,** Concurring and Dissenting.—I concur with all of the majority opinion except that part of part I which holds that the evidence established only one continuing course of criminal conduct and therefore no

---

[7] As previously noted, we assume CALJIC No. 16.170 (1987 new) was not yet available to the trial court.

[8] In *In re Maria R.* (1976) 64 Cal.App.3d 731, 734 [135 Cal.Rptr. 2], we stated: "Section 273a requires that the person charged thereunder 'willfully' intend[ed] to cause the results listed in that section, instead of the lesser requirement that the person charged 'willfully' intend[ed] only the doing of an act (or the omission of an act) that, in fact, results in any of those consequences . . . ." The court in *People v. Pointer, supra,* 151 Cal.App.3d at page 1135, footnote 5, disagreed with this statement, and held: "To the extent that this statement, which was not necessary to the result, is inconsistent with the holdings in . . . *People v. Beaugez, supra* [and other cited cases], we decline to follow it." We agree that the foregoing language in *Maria R.* is dictum and hereby disavow it.

[9] Appellant correctly asserts that the trial court erred in failing to compute those credits and in ordering the Department of Corrections to do so. (§ 2900.5, subd. (d); *People v. Sage* (1980) 26 Cal.3d 498, 508-509 [165 Cal.Rptr. 280, 611 P.2d 874].)

sua sponte duty of the trial court to instruct the jurors that they had to unanimously agree that defendant was guilty as the result of willful conduct or criminal negligence or both in order to convict her. From that portion of the decision I dissent.

Necessarily my partial concurrence means that I agree with the majority that in the case of a violation of Penal Code section 273a the jury need not be instructed that it had to unanimously agree that defendant committed the same act or acts or made the same criminal omission or omissions in order to convict, nor need it be instructed that it must unanimously agree on the same theory of liability in order to convict. (*People* v. *Madden* (1981) 116 Cal.App.3d 212, 218 [171 Cal.Rptr. 897]; *People* v. *Failla* (1966) 64 Cal.2d 560, 567 [51 Cal.Rptr. 103, 414 P.2d 39].)

I believe that the majority's analogy to aiding and abetting is inapposite since defendant was neither tried on an aiding and abetting theory nor does either party argue that proposition.

Under the continuing-course-of-conduct exception to the general rule requiring jury unanimity when the evidence shows more than one criminal act, the trial court did not have to instruct the jurors that they had to unanimously agree on a specific act of willful abuse or endangerment to convict defendant of a continuing course of willful criminal conduct. Nor was the trial court required to instruct the jurors that they had to unanimously agree on a specific instance of criminal negligence in order to convict defendant of a continuing course of criminal neglect.

I believe, however, that in a case such as the case at bench when the evidence establishes more than one continuing course of criminal conduct, the jurors must be instructed that in order to convict they must unanimously agree that defendant committed the same course or courses of conduct.

As the majority concedes, it is the general and fundamental rule that the jury must unanimously "agree upon the commission of the same act in order to convict a defendant of a charged offense. [Citations.] If the defendant is prosecuted for violation of a statute under which any one of several different acts could constitute the offense, the jury must be told that a verdict of guilty must be supported by a unanimous finding that one of the acts was committed. [Citation.]" (*People* v. *Masten* (1982) 137 Cal.App.3d 579, 588 [187 Cal.Rptr. 515].)

"The law recognizes an exception to this rule where a series of acts forms part of one and the same transaction, and as a whole, constitutes but one and the same offense. [Citations.] This exception applies to those types of

offenses which are continuous in nature, and can be comprised of multiple acts or a course of conduct over a period of time." (*Ibid.*)

With regard to the continuing-course-of-conduct exception, the court in *People* v. *Madden, supra,* 116 Cal.App.3d 212, 218 noted: "Conceptually, the exception of continuous conduct resulting in but one offense is *quite limited*. There is a fundamental difference between a continuous crime spree and continuous conduct resulting in one specific offense. The continuous conduct exception only really applies, if at all, to those types of offenses where the statute defining the crime may be interpreted as applying, on occasion, to an offense which may be continuous in nature such as failure to provide, child abuse, contributing to the delinquency of a minor, driving under the influence and the like . . . ." (Italics added.) Thus, Penal Code section 273a, a statute that could be violated by either one act or by a continuing course of conduct, comes within the continuing-course-of-conduct exception to the rule that a jury must be instructed to, and must unanimously agree on, the act or omission conjoined with the requisite intent that constitutes the violation of the statute.

That "quite limited" continuing-course-of-conduct exception is illustrated by the case of *People* v. *Ewing* (1977) 72 Cal.App.3d 714 [140 Cal.Rptr. 299], in which defendant Ewing had been convicted of abusing a 13-month-old baby under circumstances likely to produce great bodily harm or death. In *Ewing* "defendant lived with the child's mother and was frequently left alone with the child; on various occasions in September, October and November 1975, the child suffered scratches, scalds, burns and bruises which defendant attributed to accident or carelessness. On November 10, 1975, the child was brought to a hospital exhibiting head bruises and suffering from three separate subdural hematomas, one of which proved fatal. . . . [Two] doctors testified to 'a reasonable medical certainty' that the child was a victim of the battered child syndrome." (72 Cal.App.3d at p. 716.) In *Ewing,* no evidence of an alternative continuing course of conduct such as child endangering in the face of abuse by another was presented to the jury.

On appeal defendant *Ewing* contended that the trial court should have instructed the jurors sua sponte that they all had to agree that defendant committed the same act or acts in order to return a verdict of guilty. The *Ewing* court rejected that contention, holding that because Penal Code section 273a was a statute that could be violated by a continuing course of conduct and because the information alleged a course of conduct, the trial court did not err in failing to instruct the jury that unanimity as to a particular act or acts was required. (72 Cal.App.3d at p. 717.) *Ewing* is perfectly good law on that subject. It is for that same reason that I agree

that no instruction was required in this case as to jury unanimity as to the same act or acts.

While illustrative of the continuing-course-of-conduct exception, it is clear that *Ewing* is distinguishable from the case at bench since *Ewing* did not involve claimed different courses of conduct, but only *one* single continuing course of conduct.

In the case before us, defendant was charged in the information with a violation of Penal Code section 273a, subdivision (1) by continuing courses of conduct occurring "[o]n and between September 8, 1986 and September 17, 1986."

Unlike the situation in *Ewing,* there was substantial evidence in this case, not only of a continuing course of willful child abuse and endangerment by defendant, but also of a continuing course of criminal negligence by her. It is thus possible under the instructions given, and in light of the argument made by the prosecutor, that several, but less than all, jurors voted to find defendant guilty because she engaged in a course of conduct consisting of willful child abuse, and that several, but less than all, jurors voted to find her guilty because she engaged in a course of conduct consisting of criminal negligence. This results in the possibility that the jury verdict reached did not reflect the jury's unanimous verdict as to which course or courses of conduct it found defendant guilty. In *People* v. *Madden, supra,* 116 Cal.App.3d 212, 219, the court stated: "'It is fundamental that a criminal conviction requires a unanimous jury verdict (Cal. Const., art. I, §§ 16, 7, subd. (a); *People* v. *Wheeler* (1978) 22 Cal.3d 258, 265 [148 Cal.Rptr. 890, 583 P.2d 748]).'"

In a case such as this where defendant is charged in a single count with several alternative criminal courses of conduct and the evidence tends to show that he or she may have engaged in more than one such course of conduct, no California case until this one has ever excused the requirement that the jury must unanimously agree on the particular continuing course or courses of conduct of which defendant is guilty in order to convict.

The majority argues that no California case goes the other way. I believe the majority is incorrect. As *People* v. *Masten* teaches, the general rule is that "the entire jury must agree upon the commission of the same act in order to convict a defendant of a charged offense . . . [and that] [i]f the defendant is prosecuted for violation of a statute under which any one of several different acts could constitute the offense, the jury must be told that a verdict of guilty must be supported by a unanimous finding that one of the acts was committed. [Citation.]" (137 Cal.App.3d 579, 588.)

The continuing course of conduct is a *limited* exception to this general rule which occurs in the case of certain statutes, among which is Penal Code section 273a, the statute here involved.

The vice of the majority opinion is that in order to convict, it takes the limited continuing-course-of-conduct exception to the general rule and, unsupported by California precedent, attempts to transform that limited exception into a new general rule requiring no unanimous finding by the jury that the defendant committed the same course or courses of conduct. I cannot find legal support for that position and cannot join in it.

I also conclude that the constitutional requirement of jury unanimity required the trial court to instruct the jurors sua sponte that before they could find defendant guilty they had to unanimously agree that she engaged in a continuing course of willful child abuse *or* a continuing course of criminal negligence or willful neglect *or* of more than one of those courses of conduct.[1]

The suffering which the child victim in this case endured is both deplorable and heartbreaking. As the court noted in *Madden,* however, the "determination of guilt is for a jury, not [the] court. . . . [W]e have no assurance that a miscarriage of justice did not occur. Therefore, the judgment of conviction . . . must be reversed. [Citation.]" (116 Cal.App.3d at p. 219.)

Here, neither we nor the trial court may properly speculate or assume as to which course or courses of conduct the jury found defendant guilty or that they all agreed that she was guilty of the same course or courses of conduct.

This is particularly true in light of the fact that the prosecutor in her argument to the jury stated that they could find defendant guilty if they found that she personally inflicted the injuries on the child, if she failed to protect the child from an abusive husband, or if she failed to provide medical care for the child when a reasonable person in a similar situation would have done so. Thus, the prosecutor recognized that there were three "alternative" continuing courses of conduct and stated that any one of these

[1] Based on the evidence adduced at trial, an instruction substantively as follows should have been given sua sponte: In this case, the prosecution is based upon a continuing course of willful conduct or a continuing course of criminally negligent conduct. Before the jury can find the defendant guilty, the jury must unanimously agree that the defendant engaged in a continuing course of willful conduct, or unanimously agree that defendant engaged in a continuing course of criminal negligence, or unanimously agree that the defendant engaged in both courses of conduct.

three "alternative bases" of liability would justify a conviction but that the jurors did not have to agree on the same "theory."[2]

She argued: ". . . I referred to a theory of liability for abuse and I referred to a theory of liability for neglect. Every experienced prosecutor is well aware that some jurors will look at the evidence one way and some jurors will look at the evidence another way. The point that I'm trying to make here is whether or not you believe this lady actually inflicted the abuse under the theory of child abuse, there may be jurors who say, 'I'm not persuaded to that.'

"But there's no question in my mind that this little guy needed help and he didn't get it. And he was exposed to very serious potential harm, really exposed to serious risk of great bodily harm or death. That also is the basis of liability.

"So I do not wish to mislead you. The People's position in this case is that the evidence is clear that this lady inflicted abuse on this child, . . .

"But I would like you to be aware of the fact that there are alternative bases for you to consider. And whether or not you are persuaded by one or the other, if you find either one or the other, if any of the 12 of you find any of these bases together, that is sufficient.

"Now that doesn't mean you have to agree all on the same one. If you find that the statute has been violated as this lays out, then in fact you have been persuaded that this child was exposed to the risk of great bodily harm or death under one of these three possibilities."

Although the jury was instructed that any statement made by the attorneys during trial was not evidence, I cannot conclude, in the absence of a unanimity instruction as to course or courses of conduct, that the jurors were not influenced by the prosecutor's argument.

How does the majority meet this problem? It merely sweeps the problem under the rug by concluding that there was only one course of conduct and that "course of conduct" consists of *both* willful child abuse and criminal neglect. The prosecutor in her argument was more candid with the jury.

---

[2] Although the prosecutor on more than one occasion referred to a continuing course of conduct as a "theory" it is obvious that in each instance she was referring to a particular continuous course of conduct. Jurors, of course, need not be instructed that they have to unanimously agree that defendant is guilty under the same theory of liability in order to convict. (See *People* v. *Failla, supra,* 64 Cal.2d 560, 567.)

The majority does not give any explanation as to how it reaches its conclusion that there was but one continuing course of conduct. The case was not tried, argued or instructed on that basis. Not only did the prosecutor argue that there were three alternative bases but she also argued that the jury could find defendant guilty of a continuing course of willful conduct or a continuing course of criminal neglect. *At the request of the People,* the trial court instructed the jury that: "In order to prove the commission of the crime of Felony Child Endangering, each of the following elements must be proved: [¶] 1. A. That a person willfully caused or permitted a child to suffer, or inflicted thereon unjustifiable physical pain or mental suffering; *or* [¶] B. That a person having the care or custody of a child willfully caused or permitted the person or health of a child to be injured; *or* [¶] C. That a person willfully caused or permitted a child to be placed in such a situation that its person or health was endangered; *and* [¶] 2. The circumstances or conditions to which the child was exposed were likely to produce great bodily harm or death." (Italics added.)

The trial court *at the request of the People* further instructed the jury that "criminal negligence" is defined as "conduct which amounts to a reckless, gross or culpable departure from the ordinary standard of due care. It must be such a departure from what would be the conduct of an ordinarily prudent person under the same circumstances as to be incompatible with a proper regard for human life." (CALJIC No. 16.173.1 (1985 new); see also, *People* v. *Peabody* (1975) 46 Cal.App.3d 43 [119 Cal.Rptr. 780].)

A comparison of the definitions of "willfully" and "criminal negligence" readily discloses that each form of conduct is separate and distinct from the other and, accordingly, each is proven by different facts.

I would reverse and remand for a new trial under proper instructions.

Appellant's petition for review by the Supreme Court was denied January 19, 1989.