Filed 4/2/14  P. v. Vicente CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057003 |
| v. | (Super.Ct.No. RIF134517) |
| GERARDO VICENTE, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Ronald L. Taylor, Judge. (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed as modified.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Ron Jakob, and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

1

In December 2006, defendant Gerardo Vicente was under the influence of methamphetamine and thought he heard voices coming from the walls in his home. He accused his wife, Malinda S., of cheating on him. He threatened to kill her. When she tried to escape, he held a crowbar to her neck. She was able to get outside but their twin babies were still in the house. Defendant stood at the door of the house and held up one of the babies by only her shirt collar until her face changed colors. With the help of her church pastor, Malinda was able to free the two babies and leave. That evening, the house was set on fire and the first responders found defendant sitting in his car in front of the house. The fire was determined to be the result of arson.

Defendant was convicted of assault with a deadly weapon, arson, two counts of felony child endangerment, making a criminal threat, false imprisonment, intimidating a witness, and misdemeanor domestic battery.

Defendant now contends on appeal as follows:

1. The trial court erred and violated his federal and state constitutional rights to present a defense by excluding evidence that another person was in the house prior to the house catching on fire.

2. The evidence was insufficient to support his convictions of felony child endangerment under Penal Code section 273a, subdivision (a).[1]

3. The trial court erred by failing to instruct the jury on the lesser included offense of misdemeanor child endangerment.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

4. His conviction of intimidating a witness pursuant to section 136.1, subdivision (c)(1) should be reduced to a violation of section 136.1, subdivision (b).

5. His sentence on the criminal threats conviction should have been stayed pursuant to section 654.

6. He should have received additional conduct credits for time he served after October 1, 2011, pursuant to the amended version of section 4019.

7. His presentence actual custody credits were incorrectly calculated.

We agree that the abstract of judgment should be corrected to show a conviction of subdivision (b) of section 136.1 in place of subdivision (c)(1). We also reduce the amount of actual custody credits and the award of conduct credits, which we have calculated under section 2933.1 as required due to his conviction of arson of an inhabited structure. In other respects, we affirm the judgment.

I

PROCEDURAL BACKGROUND

Defendant was convicted by a Riverside County jury of arson of an inhabited structure (§ 451, subd. (b); count 1); assault with a deadly weapon (§ 245, subd. (a)(1); count 2); making a criminal threat (§ 422; count 3); false imprisonment (§ 236; count 4); two counts of child endangerment (§ 273a, subd. (a); counts 5 & 6); intimidating a witness (§ 136.1, subd. (c)(1); count 9); and misdemeanor domestic violence (§ 243, subd. (e)(1); count 10). The jury found him not guilty of an additional charge of intimidating a witness (§ 136.1, subd. (c); count 8) and count 7 (a charge of making a criminal threat) was dismissed prior to being presented to the jury.

3

Defendant was sentenced to three years on count 1, one year on count 2, one year and four months on count 5, and two years on count 9, for a total of seven years and four months to be served in state prison. The sentences on the remaining convictions were ordered to run concurrent to the imposed sentence. He was awarded 475 actual presentence custody credits, plus 226 conduct credits pursuant to section 4019, for a total of 701 days.

## II

## FACTUAL BACKGROUND

A. *People's Case-in-Chief*

On December 31, 2006, Malinda was at her home in Riverside. She lived with defendant and their five-month old twin daughters, who were all home that day. Two friends from their church, Michael and Carissa Brunelle, were living with them and stayed in the basement. Malinda woke up that morning intending to go to church. Defendant did not want to go to church and encouraged her to go back to bed.

Malinda woke up some time later and defendant was standing in the doorway of the bedroom holding a metal crowbar. Defendant asked her who she was talking to and where they were located. Malinda did not know what he was talking about; Malinda had been asleep and had not been talking to anyone. Defendant asked her "How are they getting in?" Malinda tried to get out of bed. Defendant hit her in the face with the back of his hand. Defendant told her he was going to "fucking kill her." Malinda believed he would kill her.

Malinda begged defendant not to hurt her. Defendant held the crowbar with both hands and pushed it against her neck and started choking her. Defendant again threatened to kill her if she did not tell him who was in the house. Malinda was having trouble breathing.

Defendant let go of Malinda and she grabbed the telephone. Defendant took the phone from her and threw it outside. In order to get away from defendant, Malinda pretended she was going to show defendant where "they" were coming from. She took him outside and pointed to a spot in the house where she said they were getting in. She talked him into trying to pull a board off the house so she could try to escape. She tried to run away but defendant chased after her and grabbed her. He pinned her up against the car by holding the crowbar to her neck. He choked her with the crowbar. Malinda screamed for him to let her go and defendant eventually let her go. She ran into the street and yelled for help.

Malinda ran into Juan Landin, the pastor at her church, who was driving down the street toward her house. He had come to the house to see why they had not been to church for one week. She was hysterical and crying. Malinda told Landin what had happened. Malinda advised Landin that their twin daughters were still in the house and she was worried that defendant would hurt them.[2]

Landin and Malinda approached the house. Defendant was standing at the door. He had one of the babies, Jane Doe 1, in one hand and a crowbar in the other hand.

---

[2] Landin recalled at trial that Malinda was holding one of the babies when he arrived.

5

Defendant was holding Doe 1 up off the ground by only the back of her shirt collar. Doe 1's face started changing colors. Defendant appeared very angry. Defendant threatened that if Malinda did not get back in the house, he was going to "fucking kill" Doe 1. Defendant lifted the crowbar and moved it toward Doe 1, simulating what he would do to her. Defendant also threatened Landin that he was going to hit him.

Defendant then threatened that if anyone called the police, he would kill both of the babies and they would be dead by the time the police arrived. Landin eventually was able to calm defendant enough for him to give Doe 1 and Jane Doe 2 to Landin. Malinda took the babies and left the house. Landin and defendant went outside the house and they prayed together. Landin then left the house. Landin and Malinda did not call the police because they did not want defendant to get in trouble.

Malinda went to Landin's house. Later that day, defendant called Malinda and threatened to kill himself if she did not come home. He told her that his death would be on her hands. Malinda heard a loud whistling sound in the background. When she asked defendant about the sound, he refused to tell her what was making the noise. Malinda went to church that evening. Landin told her that something had happened to her house. She immediately rushed to the home and discovered it had burned down.

At around 5:00 p.m. on that same day, the Riverside Fire Department responded to a fire alarm at the house. Riverside Police Officer Jeffrey Acosta also responded. When Officer Acosta arrived, the house was on fire. Defendant was seated in his car parked in front of the house. Officer Acosta helped defendant out of his car because he was

6

disoriented, confused and slurring his words.  Defendant admitted to recently using methamphetamine.  He was taken to the hospital.

Defendant spoke to Officer Acosta at the hospital.  Defendant claimed he had come home and was planning to lock all of the doors and windows.  He was going to leave for the weekend and no one was in the house so he wanted to lock up.  He also planned to turn on the lights so it appeared that there was someone in the house.  He came in the back door of the house.  He turned on the light in the kitchen.  A few minutes later, the windows exploded and the house was on fire.

A fire investigation was conducted at the house.  The cause of the fire was ruled arson.  There were several possible points of origin (where the fire could have started), including a hole in a mattress and other areas in the hallway, living room, the entrance to the bedroom, the baby crib and near the front door.  There was no trace of accelerants (which could be gasoline or kerosene) used in the fire.  The fire could have been started by a match or lighter.

A gas line leading from the dryer had been cut by what appeared to be a saw and the valve was turned on.  Another gas line leading to the stove was cut.  However, neither of these areas were the cause of the fire.  A pair of jeans was on the kitchen stove that was covered in smoke and soot.  Someone likely tried to start a fire with this on the stove.  Several experts testified that electrical issues were not the cause of the fire.  There was no evidence of an explosion.

Around this same time, Malinda had been charged with domestic violence against defendant for scratching him but she had been acquitted.  Defendant had

7

methamphetamine in his system at the time of this incident. Defendant had a prior conviction of misdemeanor spousal abuse in 1999 against another victim.[3] The victim had redness and bruising on her face. During the prior incident, defendant had barricaded himself in the house.

B. *Defense*

Defendant, who testified on his own behalf, admitted he had been using methamphetamine several days prior to the fire. Malinda was also using methamphetamine and they argued over other people finding out about their drug use. Malinda left the house on her own volition and he never threatened her or hit her. He never hurt Does 1 and 2. He never had a crowbar and never threatened Landin. He did not set the fire.

Defendant talked to Michael Brunelle that day and then left the house to buy a battery for his car. He was intending to drive to Los Angeles. When he arrived back home, he opened the back door and turned on the light. He locked a front window, and as he turned to leave the house, the windows exploded and the house was on fire. Defendant tried to get in his car and drive away but he had not put the new battery in the car and the car would not start. He sat in the car. Defendant never called the fire department.

---

[3] The victim testified for defendant that he never hit her.

8

## III

## EXCLUSION OF THIRD-PARTY CULPABILITY EVIDENCE

Defendant contends that the trial court erred by excluding relevant evidence that a tenant was in the home during the day the house caught on fire. He claims such exclusion violated his federal and state constitutional rights to present a defense.

A. *Additional Background*

Prior to trial, the People brought a motion in limine to exclude any third-party culpability evidence. According to the motion, defendant told the victim two weeks after the incident that he had gotten into a fight on the day of the fire with Michael Brunelle. According to the victim, defendant told her he had accused Michael of sleeping with Malinda and told him to move out. Michael wanted his money (presumably for rent) and when defendant refused to give it to him, defendant told Malinda that Michael threatened to do something if he did not get his money back.

The People argued the evidence was only hearsay from defendant that Michael had threatened him and that he would do something to him. There was no other evidence that Michael started the fire or had the motive or opportunity. The People filed an additional motion to exclude third-party culpability evidence arguing that the evidence was marginal and speculative.

The parties discussed the motion in limine. The trial court noted that it could not keep defendant from testifying that he saw other persons in the house the day of the fire. Defendant, however, could not present evidence or speculate that someone else set the fire.

During cross-examination of Malinda, defendant's counsel asked her if Michael was paying rent. The relevancy objection was sustained.

Defendant told Officer Acosta that night at the hospital that no one else was home on the day of the fire.

During defendant's testimony, defendant's counsel sought to elicit from defendant testimony about what he talked to Michael about that day. A sidebar conference was conducted. Defendant's counsel made an offer of proof that defendant would testify that he asked Michael and Carissa Brunelle to move out so that defendant and his family could be alone. Defendant would testify that when he left the house, Michael was still in the house. The trial court ruled as follows: "Well, that might be true; however, that could amount to third-party culpability evidence. And it could later be used to make the argument that Mr. Brunelle had the motive and/or opportunity to commit the crime. And there is case law, in particular a case called People versus Hall, and that is a 1986 case, 41 Cal 3d 826. And the Supreme Court then defined third-party culpability evidence and placed a limit on it. There must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime. And there has been a number, of course, without going into the citations, who applied the Hall standards and frequently concluded that evidence providing only a possible motive or opportunity to some third party is insufficient to or beyond a reasonable doubt of guilty." The trial court then ruled, "At this time, I'm going to rule that the question asked for a response that would not be relevant evidence to any of the issues that we're going to submit to the jury. In addition, applying the Hall standard, it appears to the Court that that answer could only provide a

10

possible motive or opportunity that Mr. Brunelle set the house on fire, and that is insufficient to raise a reasonable doubt of guilt. So therefore, my ruling is to sustained [sic] the objection on the basis of third-party culpability, along with relevance."

B.    *Analysis*

All evidence having any tendency in reason to prove or disprove a disputed fact is admissible. (Evid. Code, § 210.) Defendant claims that he did not seek to admit the evidence as third-party culpability evidence. Rather, he claims that the only evidence against him was that he was alone in the house at the time of the fire and therefore he had to be the perpetrator. He did not intend the evidence to show that Michael set the fire, but rather that Michael and defendant "stood in exactly the same position in terms of the jury's determination of guilt."

Initially, defendant's offer of proof below was clearly based on the admission of the evidence to show that Michael had a motive to set the fire at the house. Further, although defendant claims the evidence was relevant only to show someone else was in the house, it is simply an attempt to avoid the strict rigors of the admission of third-party culpability evidence. Moreover, the trial court clearly considered defendant's offer of proof to be that Michael had a motive to set the fire, and based on its first ruling, defendant was not foreclosed from introducing evidence that he and Michael had been at the house. Defendant cannot complain on appeal that the trial court erred when he did not make an offer of proof below based on the same grounds for which he claims error on appeal. (See *People v. Holford* (2012) 203 Cal.App.4th 155, 169 ["'A party cannot argue

11

the court erred in failing to conduct an analysis it was not asked to conduct.' [Citation.]."], italics omitted.)

Additionally, the evidence was properly excluded as improper third-party culpability evidence. "In general, third party culpability evidence is admissible if it 'rais[es] a reasonable doubt of defendant's guilt.' [Citation.] This does not mean, however, that no reasonable limits apply. Evidence that another person had 'motive or opportunity' to commit the charged crime, or had some 'remote' connection to the victim or crime scene, is not sufficient to raise the requisite reasonable doubt. [Citation.] . . . [T]hird party culpability evidence is relevant and admissible only if it succeeds in 'linking the third person to the actual perpetration of the crime.' [Citations.]" (*People v. DePriest* (2007) 42 Cal.4th 1, 43; see also *People v. Hall* (1986) 41 Cal.3d 826, 833.)

Third-party culpability evidence should "simply [be] treat[ed] . . . like any other evidence [and] if relevant it is admissible [citation] unless its probative value is substantially outweighed by the risk of undue delay, prejudice, or confusion [under Evidence Code section 352]." (*People v. Hall, supra,* 41 Cal.3d at p. 834.) The trial court's ruling on the evidence may not be disturbed absent a showing that its ruling was an abuse of discretion. (*People v. Harris* (2005) 37 Cal.4th 310, 337.)

Here, the trial court did not abuse its discretion by excluding evidence that Michael had a motive to set the fire in the house. The only evidence was defendant's self-serving testimony that he had told Michael to move out and he was angry. There was no other evidence connecting Michael to the setting of the fire or even evidence that Michael was present at the house around the time the fire started. When defendant was

12

first asked if anyone else was in the house, he said he was alone. The evidence only went to motive and did not show direct or circumstantial evidence linking Michael to starting the fire.

Moreover, even if the trial court erred, we find that it was not prejudicial. "When the reviewing court applying state law finds an erroneous exclusion of defense evidence, the usual standard of review for state law error applies: the court must reverse only if it also finds a reasonable probability the error affected the verdict adversely to defendant. [Citations.]" (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1089; *People v. Watson* (1956) 46 Cal.2d 818, 836.) Defendant contends that his state and federal constitutional rights were violated by the exclusion of the evidence. However, the usual standard of review for exclusion of evidence is state law error. Moreover, defendant was not foreclosed from presenting a defense. Hence, we reject that defendant was foreclosed from presenting a defense or that such exclusion of his third-party culpability evidence requires review under the *Chapman v. California* (1967) 386 U.S. 18, 23 beyond-a-reasonable-doubt standard.

Here, the evidence that defendant set the fire was strong. Defendant and Malinda got into a very heated argument and she was forced out of the house with their two babies. Defendant called Malinda and told her that if she did not come home, he would kill himself and his death would be on her hands. She heard an unexplained whistling sound. Defendant was present at the house when the first responders arrived. He was seated in his car near the house, which was on fire. He never called the fire department to report the fire despite claiming that it had just happened. His explanation of how the fire

13

started, in light of the evidence of multiple origins of the fire which were intentionally set, was unbelievable. Hence, even if the jury had been presented with evidence that Michael had been in the house and that he was angry with defendant, the result would be the same.

IV

INSUFFICIENT EVIDENCE OF FELONY CHILD ENDANGERMENT

Defendant contends that insufficient evidence of felony child endangerment was presented to support his convictions in counts 5 and 6.

"Our task is clear. 'On appeal we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence — that is, evidence that is reasonable, credible, and of solid value — from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] The standard of review is the same in cases in which the People rely mainly on circumstantial evidence. [Citation.] "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. '"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment."' [Citations.]" [Citation.]' [Citations.] The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there

14

sufficient substantial evidence to support [the conviction].'" [Citation.]" (*People v. Cravens* (2012) 53 Cal.4th 500, 507-508.)

A child endangerment conviction under section 273a, subdivision (a) requires evidence that the defendant "(1) willfully and directly inflicts 'unjustifiable physical pain or mental suffering' upon the child, (2) merely willfully 'permits' the infliction of such pain or suffering or injury to the child's 'person or health,' or (3) willfully places or permits the child to be placed 'in such situation that its person or health is endangered.'" (*People v. Vargas* (1988) 204 Cal.App.3d 1455, 1465.)[4]

A "'[v]iolation of section 273a, subdivision (a) "'can occur in a wide variety of situations: the definition broadly includes both active and passive conduct, i.e., child abuse by direct assault and child endangering by extreme neglect.' [Citation.] . . . Section 273a[, subdivision (a) ] is 'intended to protect a child from an abusive situation in which the probability of serious injury is great.' [Citation.] '[T]here is no requirement

---

[4]     The jury was instructed on section 273a, subdivision (a), in pertinent part, as follows: "[W]hile having care or custody of a child, willfully caused or permitted the child to be placed in a situation where the child's person or health was in danger; . . . the defendant caused or permitted the child to be in danger under circumstances or conditions likely to produce great bodily harm; And . . . the defendant was criminally negligent when he caused or permitted the child to be in danger." "Likely to produce great bodily injury" was defined as "the probability of great bodily harm is high. Great bodily harm means significant or substantial physical injury. It is an injury that is greater that [sic] is minor or moderate harm." Further, "criminal negligence was defined as a person who acts "in a reckless way that is a gross departure from the way an ordinary careful person would act in the same situation; . . . the person's acts amount to disregard for human life or indifference to the consequences of his act; . . . a reasonable person would have known that acting in that way would naturally and probably result in harm to others."

that the actual result be great bodily injury.' [Citation.]" [Citation.]' [Citation.]" (*People v. Cockburn* (2003) 109 Cal.App.4th 1151, 1160.)

"[S]ection 273a, subdivision (a) sets forth a standard of conduct that is rigorous. Ordinary negligence will not suffice. Specifically, criminal negligence involves '"a higher degree of negligence than is required to establish negligent default on a mere civil issue. The negligence must be aggravated, culpable, gross, or reckless, that is, the conduct of the accused must be such a departure from what would be the conduct of an ordinarily prudent or careful [person] under the same circumstances as to be incompatible with a proper regard for human life . . . or an indifference to consequences.'" [Citation.]" (*People v. Valdez* (2002) 27 Cal.4th 778, 788.)

Initially as to Doe 1, there was direct evidence of harm likely to cause great bodily injury. Defendant held Doe 1 by her shirt collar until her face changed colors. Doe 1 was held up off the ground by her shirt collar and easily could have fallen. She also could have choked had Landin not intervened. It must be remembered that Doe 1 was only five months old and particularly vulnerable. Additionally, defendant had a crowbar in his hand and moved it toward Doe 1. Such action could have resulted in grave injury to Doe 1. The evidence clearly established that defendant acted in a grossly reckless manner with a complete disregard for Doe 1's life. (*People v. Valdez, supra,* 27 Cal.4th at p. 788.)

As for Doe 2, there was no direct evidence that defendant held or threatened her. However, defendant was so intoxicated that he was hearing voices in the house. Additionally, defendant committed serious domestic violence against Malinda. He hit

16

her with the back of his hand and threatened to kill her. He also held a crowbar to her neck two times. Malinda was so terrified that she had to leave the house, leaving Doe 2 in the care of defendant, who clearly could not care for her based on his drug use. As the prosecutor argued, "[A]ny man or any woman that gets so high that they are talking about guys in the wall, guys sneaking in the house somehow, so high that he's acting so aggressively to the woman that he loves, is putting children at risk."

Based on the foregoing, sufficient evidence supported the jury's verdict finding defendant guilty of two counts of child endangerment in violation of section 273a, subdivision (a).

V

LESSER OFFENSE OF CHILD ENDANGERMENT

Defendant contends the trial court should have instructed the jury on misdemeanor child endangerment as a lesser included offense of counts 5 and 6 (felony child endangerment against Does 1 and 2) because the jury could have concluded defendant was guilty only of misdemeanor child endangerment pursuant to section 273a, subdivision (b).

"'"It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence."' [Citation.]" (*People v. Breverman* (1998) 19 Cal.4th 142, 154.)[5] "'"That

[5]    We note that the trial court put on the record that defendant was only requesting a lesser included offense instruction of simply battery for count 2 and attempted false imprisonment for count 4. He requested that no other lesser included

*[footnote continued on next page]*

17

obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged."  [Citations.]'"  (*Ibid.*)

Section 273a, subdivision (b) provides in pertinent part, "[a]ny person who, under circumstances or conditions other than those likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health may be endangered . . . ."  We previously set forth the elements of felony child endangerment.

The only difference between misdemeanor and felony child endangerment is that the felony requires evidence the defendant placed the child under circumstances likely to produce great bodily injury or death.  (*People v. Burton* (2006) 143 Cal.App.4th 447, 454, fn. 4.)  Less aggravated actions, which are "other[ ] than those likely to produce" great bodily harm, is deemed misdemeanor conduct.  (*People v. Deskin* (1992) 10 Cal.App.4th 1397, 1401.)

---

*[footnote continued from previous page]*
offense instructions be given for strategic and tactical reasons.  The People also did not want any other instructions given.  However, the trial court was required to give the instruction if supported by the evidence.

The trial court did not have a sua sponte duty in this case to instruct the jury with misdemeanor child abuse as the only reasonable finding a jury could make in this case is that defendant committed child abuse under conditions likely to produce great bodily injury or death. Defendant had ingested so much methamphetamine that he was hearing voices in the walls. He verbally and physically attacked Malinda in the home where both Does 1 and 2 were present. Although Does 1 and 2 apparently did not witness the abuse, it put them in grave danger since they were only five months old and needed constant care. Malinda was unable to care for them because of her fear of defendant.

Further, defendant held Doe 1 by her shirt collar until her face changed colors. Doe 1 could have fallen or choked. Further, defendant simulated what he was going to do to both babies by swinging the crowbar toward Doe 1. In his condition, great bodily injury or death was likely in moving the crowbar toward Doe 1.

During this time, Doe 2 was left unattended in the house. Defendant continued to be angry and hear voices due to the consumption of methamphetamine. At the age of only five months, Doe 2 required constant supervision. As such, the jury could only conclude he was guilty of felony child endangerment.

Even if the trial court erred in not instructing on misdemeanor child endangerment, such error was harmless since it is not reasonably probable the jury would have returned a more favorable verdict had an instruction on misdemeanor child endangerment been given. (*People v. Breverman, supra,* 19 Cal.4th at p. 178; *People v. Watson, supra,* 46 Cal.2d at p. 836.)

19

Defendant's actions were particularly egregious as outlined in the previous section. The evidence overwhelmingly established that defendant was guilty of felony child endangerment.

## VI

## INSTRUCTION ON AGGRAVATED ELEMENTS

## OF WITNESS INTIMIDATION

Defendant contends that the abstract of judgment must be modified to reflect that the trial court reduced his violation of section 136.1, subdivision (c)(1), to a violation of subdivision (b) of that section. We agree.

"Subdivisions (a) and (b) of Penal Code section 136.1 require that a defendant knowingly and maliciously prevent or dissuade or attempt to prevent or dissuade a victim or witness from reporting or testifying. . . . Subdivision (c)(1) of Penal Code section 136.1 adds force or an express or implied threat of force or violence as an element." (*People v. Neely* (2004) 124 Cal.App.4th 1258, 1261.)

Here, the jury was instructed with CALCRIM No. 2622, which defined knowingly and maliciously but did not instruct the jury, as required pursuant to section 136.1, subdivision (c)(1), that it must find force or threat of force. After the jury verdict, the trial court noted that it had failed to instruct the jury with CALCRIM No. 2623, which should have been given with the charge of violating section 136, subdivision (c)(1). The trial court noted that at the time of sentencing that defendant would only be sentenced on a section 136.1, subdivision (b) charge. At sentencing, the trial court imposed sentence as follows: "With regard to Count 9, the violation of Penal Code section 136.1,

20

subdivision (b), subsection (1), the mid term of 2 years, and that's full middle term, consecutive to all other time imposed pursuant to Penal Code section 1170.15." The abstract of judgment reflects that defendant was convicted of a violation of section 136.1, subdivision (c)(1) on count 9.

Where there is a discrepancy between the oral pronouncement of the sentence and the abstract of judgment, the oral pronouncement controls. (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.) As such, we will order that the abstract of judgment be corrected to reflect that defendant was convicted of a violation of section 136.1, subdivision (b).

VII

SECTION 654

Defendant contends that his sentence for his conviction of making criminal threats in Count 3 should have been stayed pursuant to section 654 because it was part of a continuous course of conduct with Count 2, the assault with a deadly weapon conviction.

Under section 654, "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." The statute thus prohibits punishment for two crimes arising from a single, indivisible course of conduct. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.)

"'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective*

21

of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' [Citation.]" (*People v. Latimer, supra,* 5 Cal.4th at p. 1208.) On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives, which were independent of and not merely incidental to each other, the trial court may impose punishment for independent violations committed in pursuit of each objective even though the violations shared common acts or were part of an otherwise indivisible course of conduct. (*People v. Centers* (1999) 73 Cal.App.4th 84, 98 [Fourth Dist., Div. Two].)

The prosecutor argued that there were two incidents that could support that defendant committed assault with a deadly weapon: both times that he held the crowbar to Malinda's neck. The jury was given a unanimity instruction and advised that it could decide which of the times they agreed determined the conviction. The jury found him guilty of assault with a crowbar. The prosecutor argued that he made criminal threats as he held the crowbar in his hand and threatened to kill her. This was immediately after he had slapped her in the face.

The trial court impliedly found that the incidents all had a separate intent and objective as there was no discussion of section 654 at the time of sentencing. The evidence supports the concurrent sentences on counts two and three.

Defendant threatened to kill Malinda if she did not tell him who was in the house. He slapped her in the face. Defendant clearly was angry with Malinda because he thought she was in the house with someone other than him. Defendant's objective was to threaten to kill her for being with someone else. Once defendant struck her in the face

22

and threatened her, she was in sustained fear for her safety. She begged him not to hurt her.

It was not necessary that defendant additionally hold the crow bar to her neck to instill this fear. In putting the crowbar to her neck, he did so with the objective that he did not want her to run away and he wanted to inflict pain on her.

Based on the foregoing, defendant had separate intents and objectives in making the criminal threats and committing assault with a deadly weapon. The trial court properly sentenced defendant to concurrent sentences on counts 2 and 3.

VIII

CUSTODY CREDITS

Defendant contends, and respondent concedes, that his actual custody credits were improperly calculated. "A defendant is entitled to actual custody credit 'for all days of custody' in county jail and residential treatment facilities, including partial days. [Citations.]" (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48.)

Defendant was arrested on February 3, 2007, and released on March 2, 2007 (a total of 28 days). He was taken back into custody on April 6, 2011, and was sentenced on June 22, 2012 (a total of 444 days). The parties agree that the proper calculation of actual custody credits should have been 472 days.

Defendant additionally claims that he was entitled to 142 additional days of presentence custody credits under section 4019 as amended on October 1, 2011. Respondent has contended that defendant was not entitled to the increased custody credits under section 4019 and has assumed that the credits were properly calculated pursuant to

23

section 4019. However, based on defendant's conviction of arson of an inhabited property pursuant to section 451, subdivision (b), he was only entitled to 15 percent custody credits as calculated under section 2933.1.

Pursuant to section 2933.1, subdivision (a), for a defendant convicted of any "violent felony" listed in section 667.5, subdivision (c), worktime credit is limited to no more than 15 percent of the total worktime that would otherwise be included in the award of presentence credits. Section 667.5, subdivision (c)(10), lists "[a]rson, in violation of subdivision (a) [causing great bodily injury] or (b) [causing an inhabited structure or property to burn] of Section 451." Defendant was convicted of a violation of subdivision (b) of section 451. As such, the trial court should have limited the award of conduct credits to 15 percent of the actual custody credits.

An incorrect calculation of custody credits results in an unauthorized sentence, which may be corrected at any time. (*People v. Duran* (1998) 67 Cal.App.4th 267, 270.) Defendant should have been awarded 472 days of actual custody credit plus 70 days of conduct credit, for a total of 542 days of presentence custody credit.

IX

DISPOSITION

The superior court clerk is directed to prepare a corrected abstract of judgment as follows: (1) the violation of section 136.1, subdivision (c)(1) shall be reduced to a violation of section 136, subdivision (b); (2) the actual custody credits shall be modified to reflect 472 days; and (3) the conduct credits shall be reduced to 70 days, calculated pursuant to section 2933.1. A corrected abstract of judgment shall be sent to the

24

California Department of Correction and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
J.

We concur:

RAMIREZ
P. J.

CODRINGTON
J.