Filed 4/27/15  P. v. Powell CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DWIGHT POWELL,<br><br>    Defendant and Appellant. | C076366<br><br>(Super. Ct. Nos. 13F03647,<br>09F03694) |

In 2009, defendant Dwight Powell pled no contest to second degree robbery and was granted formal probation for five years.  In 2013, while still on probation, defendant led law enforcement on a high speed chase through a residential neighborhood with a six-year-old child in the back seat of the car that defendant drove through a stop sign and crashed into another vehicle before fleeing the scene of the accident on foot.  He was convicted by jury of child endangerment under conditions likely to produce great bodily harm or death.  (Pen. Code, § 273a, subd. (a).)[1]  In a bifurcated proceeding, the trial court

---

[1]    Undesignated statutory references are to the Penal Code.  Because the jury could not reach a unanimous verdict on an additional count of violating Vehicle Code

found defendant was previously convicted of the aforementioned robbery, a serious felony within the meaning of the three strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and that he served one prior prison term for a 2005 petty theft with priors conviction (§ 667.5, subd. (b)). Defendant was sentenced to serve nine years in state prison (middle term of four years for child endangerment, doubled pursuant to the three strikes law, plus one year for the prior prison term enhancement); probation was revoked in the 2009 case, and defendant was sentenced to serve a concurrent three-year term for the robbery.

On appeal, defendant contends the trial court prejudicially erred and violated his constitutional right to a unanimous verdict by failing to provide the jury with a unanimity instruction. We disagree and affirm. As we explain, this case falls squarely into the continuous course of conduct exception to the trial court's sua sponte duty to provide a unanimity instruction. Not only does the statute defining the crime of child endangerment contemplate a continuous course of conduct, but the acts alleged to have constituted the crime in this case were so closely connected that they formed part of one and the same transaction, and thus one offense.

FACTS

We dispense with a recitation of the facts underlying defendant's 2009 robbery conviction as they are unnecessary to our resolution of this appeal. With respect to the 2013 child endangerment conviction, in accordance with the standard of review, we recite the underlying facts in a light most favorable to the judgment. (See *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) Facts relevant only to the felony hit and run charge, upon which the jury could not unanimously agree, are omitted.

---

section 20001, subdivision (a), holding the driver of a vehicle involved in an injury-producing accident criminally liable for failure to stop, provide identifying information, and render assistance to the injured person, felony hit and run (see *People v. Powell* (2010) 181 Cal.App.4th 304, 315-316), the trial court declared a mistrial on this count.

On June 7, 2013, at about 8:30 p.m., defendant was standing next to his car, a Ford Taurus, that was parked next to a liquor store on Cottage Way in Sacramento. Inside the car were defendant's 18-year-old son, Trayvon Little, who was seated in the front passenger seat, and defendant's girlfriend's six-year-old son, X., who was seated in the back seat. A deputy with the Sacramento County Sheriff's Department, who was on patrol in the area, saw defendant standing next to his car and ran a vehicle records check, which revealed the registration was suspended and the vehicle had recently changed ownership. As defendant was listed as the new owner, the deputy entered his name into the department's "known person finder" search and discovered defendant's driver's license was also suspended.

At this point, defendant got into the Taurus and pulled onto Cottage Way. The deputy followed in his patrol vehicle at a distance of two or three car lengths. After turning onto Howe Avenue, defendant accelerated to about 70 miles per hour and then turned into a residential neighborhood, traveling through this neighborhood at speeds of between 50 and 60 miles per hour. When defendant entered the residential neighborhood, the deputy activated his patrol car's lights and sirens and followed in pursuit. As defendant's car lost traction turning from Delma Way to Darwin Street, made another turn onto Ernest Way, drove through a stop sign at the intersection of Ernest Way and Ethan Way, it crashed into an SUV that was lawfully traveling on Ethan Way. When the Taurus came to a stop after the collision, defendant got out of the driver's side and ran south down Ethan Way. As the deputy pulled up to the accident, defendant's son climbed out of the passenger side window and was taken into custody. X. then emerged from the back seat and started turning slowly in a circle in front of the car as he held his stomach and cried for his mom. X. was about four feet two inches in height and weighed about 65 pounds, too small to be properly positioned behind a seat belt without the use of a booster seat; there was no booster seat in the car.

Medical personnel arrived a short time later. X. was transported to the hospital, as was the driver of the SUV involved in the collision. Neither was seriously injured. Defendant was found a short distance away, hiding behind some trash cans in an apartment complex, and was taken into custody.

## DISCUSSION

Defendant claims the trial court prejudicially erred and violated his constitutional right to a unanimous verdict by failing to provide the jury with a unanimity instruction, such as CALCRIM No. 3500.[2] He is mistaken.

A criminal defendant has a constitutional right to a unanimous jury verdict, meaning "the jury must agree unanimously the defendant is guilty of a *specific* crime." (*People v. Russo* (2001) 25 Cal.4th 1124, 1131.) Thus, "if one criminal act is charged, but the evidence tends to show the commission of more than one such act, '*either* the prosecution must elect the specific act relied upon to prove the charge to the jury, *or* the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act.' [Citation.]" (*People v. Napoles* (2002) 104 Cal.App.4th 108, 114.) In such a case, where no election has been made by the prosecution, the trial court possesses a sua sponte duty to provide a unanimity instruction. (*People v. Dieguez* (2001) 89 Cal.App.4th 266, 274-275.)

However, there is an exception to this instructional duty. "Even when the prosecution proves more unlawful acts than were charged, no unanimity instruction is required where the acts proved constitute a continuous course of conduct." (*People v.*

---

**2** This instruction provides: "The defendant is charged with _____ <*insert description of alleged offense*> [in Count ___] [sometime during the period of _____ to _____]. [¶] The People have presented evidence of more than one act to prove that the defendant committed this offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed." (CALCRIM No. 3500.)

*Napoles*, *supra*, 104 Cal.App.4th at p. 115, citing *People v. Diedrich* (1982) 31 Cal.3d 263, 282.) "'This exception arises in two contexts. The first is when the acts are so closely connected that they form part of one and the same transaction, and thus one offense. [Citation.] The second is when . . . the statute contemplates a continuous course of conduct of a series of acts over a period of time. [Citation.] [¶] This second category of the continuous course of conduct exception has been applied to a limited number of varying crimes, including . . . failure to provide for a minor child [citation], contributing to the delinquency of a minor [citation], and child abuse [citation].'" (*People v. Avina* (1993) 14 Cal.App.4th 1303, 1309, quoting *People v. Thompson* (1984) 160 Cal.App.3d 220, 224.)

Here, both categories of the continuous course of conduct exception apply. Beginning with the latter category, the statute defining the crime of child endangerment contemplates a continuous course of conduct. Section 273a, subdivision (a) provides: "Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished by imprisonment in a county jail not exceeding one year, or in the state prison for two, four, or six years." We have previously held, in *People v. Ewing* (1977) 72 Cal.App.3d 714, that the portion of this statute defining the crime of child abuse contemplates a continuous course of conduct, explaining: "Although the child abuse statute may be violated by a single act [citation], more commonly it covers repetitive or continuous conduct." (*Id.* at p. 717; see also *People v. Vargas* (1988) 204 Cal.App.3d 1455, 1462; *People v. Napoles*, *supra*, 104 Cal.App.4th at p. 116-117.) So too with respect to the portion of the statute defining child endangerment. While a defendant may endanger a child's person or health with a single act, the crime of child

5

endangerment also covers continuous conduct. For example, a defendant who on a single occasion brings a child to a house in which methamphetamine is manufactured may be said to have endangered that child's person or health with that single act, whereas a defendant who engages in the manufacture of methamphetamine in that child's home will endanger the child during the entire period of time the methamphetamine is manufactured on the premises.

However, because child endangerment is not invariably a course of conduct offense, we also address the first category of the exception and conclude the acts proven in this case were so closely connected that they formed part of one and the same transaction, and thus one offense. (See *People v. Avina*, *supra*, 14 Cal.App.4th at p. 1309.) This is so notwithstanding defendant's argument on appeal that the prosecutor, during her closing argument to the jury, highlighted certain "discrete acts by [defendant] that might have endangered [X.]," including driving at high rates of speed, driving through a stop sign, crashing into another vehicle, fleeing from the scene of the accident, and not having a booster seat in the car for X. Leading law enforcement on a high speed chase through a residential neighborhood with a six-year-old child improperly positioned behind his seat belt in the back seat of the car, culminating in defendant running a stop sign, crashing into another vehicle and then fleeing on foot, amounted to a continuous course of conduct that endangered X.'s person or health. Stated more simply, the chase in its entirety was the transaction that endangered X. Defendant may not parse out each stage of the chase into distinct criminal acts and then require that the jury be instructed to agree on which of these acts endangered X.

This conclusion is supported by our Supreme Court's observation in *People v. Russo*, *supra*, 25 Cal.4th 1124: "The key to deciding whether to give the unanimity instruction lies in considering its purpose. The jury must agree on a 'particular crime' [citation]; it would be unacceptable if some jurors believed the defendant guilty of one crime and other jurors believed her [or him] guilty of another. But unanimity *as to*

6

*exactly how the crime was committed is not required*. Thus, the unanimity instruction is appropriate 'when conviction on a single count could be based on two or more discrete criminal events,' but *not* 'where multiple theories or acts may form the basis of a guilty verdict on one discrete criminal event.' [Citation.] In deciding whether to give the instruction, the trial court must ask whether (1) there is a risk the jury may divide on two discrete crimes and not agree on any particular crime, or (2) the evidence merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a single discrete crime. In the first situation, *but not the second*, it should give the unanimity instruction." (*Id*. at pp. 1134-1135, italics added.)

In *People v. Napoles*, *supra*, 104 Cal.App.4th 108, a child abuse case involving injuries inflicted on an infant over the course of about two months, the Court of Appeal held the foregoing rule did not require a unanimity instruction. Two factors contributed to the court's conclusion. First, the accusatory pleading alleged one violation of section 273a, subdivision (a), for misconduct occurring between two specified dates. Thus, as in *People v. Ewing*, *supra*, 72 Cal.App.3d 714, "'[t]he issue before the jury [was] whether the accused was guilty of the course of conduct, not whether he had committed a particular act on a particular day.'" (*People v. Napoles*, *supra*, 104 Cal.App.4th at p. 116.) Second, the evidence established "'a pattern of physical trauma inflicted upon a child within a relatively short period of time, *a single course of conduct*.'" (*Ibid*., quoting *People v. Vargas*, *supra*, 204 Cal.App.3d at p. 1464.) The court concluded: "Based on the language of the charging document and the evidence presented, we believe that any jury disagreement would have been focused on the exact way the charged offense was committed and not on whether one of several discrete crimes had occurred. Thus we find no error in the trial court's refusal to give a unanimity instruction." (*Napoles, supra,* at p. 117.)

Here, defendant makes much of the fact that, unlike the cases cited immediately above, the charging document in this case alleged the crime was committed on a single

7

date. This does not undermine our conclusion. While we agree the charging document did not notify the jury a course of conduct was alleged, this is not dispositive. Defendant cites no authorities establishing that a course of conduct must occur over multiple days. Indeed, the opposite is true. (See *People v. Finney* (1980) 110 Cal.App.3d 705, 716 [conviction of two counts of assault with a deadly weapon on a peace officer supported by "continuous course of conduct in repeatedly ramming well-marked patrol cars"].) Moreover, the second factor present in *People v. Napoles*, *supra*, 104 Cal.App.4th 108 is the dispositive factor here. The high speed chase amounted to a pattern of endangering conduct engaged in over a very short period of time. Based on this factor alone, "we believe that any jury disagreement would have been focused on the exact way the charged offense was committed and not on whether one of several discrete crimes had occurred." (*Id*. at p. 117.)

Finally, defendant argues a unanimity instruction was required because he "presented distinct defenses based on one or another of the alleged acts." This argument is not supported by citation to relevant authority and is therefore forfeited. (See *People v. Stanley* (1995) 10 Cal.4th 764, 793.) In any event, whether defendant presented a single defense or multiple defenses is a component of the harmless error analysis. Error in failing to provide the jury with a unanimity instruction may be found harmless "where the jury's verdict implies that it did not believe the only defense offered," but not where a defendant asserts a separate defense to distinct criminal acts, such that some jurors may have believed the defendant guilty of one crime and other jurors believed him or her guilty of another. (*People v. Diedrich*, *supra*, 31 Cal.3d at pp. 282-283.) Here, as we have already explained, there was but a single criminal act, i.e., endangering X.'s person or health by engaging in the above-described car chase, and therefore no instructional error requiring an assessment of prejudice.

We conclude the trial court neither erred nor violated defendant's right to a unanimous verdict by declining to provide the jury with a unanimity instruction.

8

DISPOSITION

The judgment is affirmed.

       HOCH     , J.

We concur:

     RAYE     , P. J.

     MURRAY  , J.